## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANNALISA KELL *on behalf of herself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>LILY'S SWEETS, LLC & THE HERSHEY COMPANY,<br><br>Defendants. | Case No. **23-cv-147**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Annalisa Belinda Kell ("Plaintiff") brings this class action lawsuit in her individual capacity as well as on behalf of all others similarly situated against The Hershey Company ("Hershey") and Lily's, LLC ("Lily's" and collectively with Hershey, "Defendants"), and alleges, upon personal knowledge as to her own actions, her counsel's investigation and upon information and good faith belief as to all other matters, as follows:

1. This action seeks to remedy the deceptive and misleading business practices of Hershey and Lily's with respect to the marketing and sale of Lily's Extra Dark Chocolate 70% Cocoa chocolate bars (hereinafter, the "Products") throughout the State of New York and the country.

2. Defendants do not disclose that the Products contain lead, which is an extremely dangerous and harmful chemical when consumed, especially by pregnant women and children.

3. Scientists agree that there is *no* level of lead that is safe; according to the Mayo Clinic, "[l]ead poisoning occurs when lead builds up in the body, often over months. or years.

1

Even small amounts of lead can cause serious health problems. Children younger than 6 years are especially vulnerable to lead poisoning, which can severely affect mental and physical development. At very high levels, lead poisoning can be fatal."[1]

4. *Consumer Reports* Magazine and independent testing uncovered that many chocolate products contained high levels of lead, as well as the dangerous chemical cadmium.[2]

5. Using California's Maximum Allowable Dose Level (MADLs) for lead (0.5 Micrograms) and cadmium (4.1mcg), *Consumer Reports* found that Lily's Extra Dark Chocolate 70% Cocoa Product contained 144% of the MADL of lead.[3] California's MADLs (otherwise known as Proposition 65) is a regulatory standard for chemicals causing reproductive toxicity.[4]

6. Defendants' marketing and advertising campaign includes the one place that every consumer looks when deciding whether to purchase a product – the packaging and labels themselves.

7. Defendants' advertising and marketing campaign for the Products is false, deceptive, and misleading because it does not disclose the high levels of lead in the Products.

8. The presence of lead, particularly in high or elevated levels, in food products is unquestionably material to reasonable consumers, because the chemical poses serious health risk, even in small dosages. Additionally, the lead levels in the Products could not be known before purchasing them, and may not be determined without extensive and expensive scientific testing.

---

[1] https://www.mayoclinic.org/diseases-conditions/lead-poisoning/symptoms-causes/syc-20354717

[2] https://www.consumerreports.org/health/food-safety/lead-and-cadmium-in-dark-chocolate-a8480295550/

[3] *Id.*

[4] https://oehha.ca.gov/proposition-65/general-info/current-proposition-65-no-significant-risk-levels-nsrls-maximum

9. Accordingly, consumers understandably and justifiably rely on Defendants to be truthful regarding the ingredients, including the presence of dangerous chemicals like lead and cadmium, in the Products.

10. On the other hand, Defendants knew and could not be unaware of the existence of lead in the Products. Defendants source the ingredients and manufacture the Products, and have exclusive knowledge of the quality control testing on the Products and the ingredients contained therein.

11. Plaintiff and those similarly situated (the "Class Members") relied on Defendants' misrepresentations and omissions that the Products contained only dark chocolate ingredients when purchasing the Products.

12. Plaintiff and Class Members paid a price premium for the Products based upon Defendants' marketing and advertising campaign, and therefore they have suffered injury in the amount of the premium paid.

13. Defendants' conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350. Defendants also breached and continue to breach their warranties regarding the Products. Accordingly, Plaintiff brings this action against Defendants on behalf of herself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## PARTIES

*Plaintiff*

14. Plaintiff Annalisa Kell is an individual consumer who, at all times material hereto, was a citizen of the State of New York, residing in New York County, New York. Plaintiff purchased the Products in New York County, New York multiple times during the Class Period.

3

Prior to purchasing the Products, Plaintiff read the Products' labels.

15. Plaintiff purchased the Products in reliance on Defendants' representation that the Products contained only the dark chocolate ingredients set forth on the label and packaging and were safe for consumption. Plaintiff believes that products that advertise as dark chocolate do not contain lead. If the Products did not contain lead, Plaintiff would purchase the Products in the immediate to near future.

16. The most recent time Plaintiff purchased and consumed the Products she was breastfeeding her two-month old child.

17. Had Defendants disclosed that the Products contained lead, Plaintiff would not have been willing to pay the same amount for the Products and/or would not have been willing to purchase the Products. Plaintiff purchased and paid more for the Products than she would have had she known the truth about the Products. The Products Plaintiff received were worth less than the Products for which she paid. Plaintiff was injured in fact and lost money as a result of Defendants' improper conduct.

*Defendants*

18. Defendants Hershey and Lily's are Pennsylvania corporations with their principal place of business in Hershey, Pennsylvania.

19. Hershey and Lily's are authorized to do business in New York.

20. The Hershey Company is a conglomerate with a line of chocolate products, including the Products, purchased by Plaintiff and Class Members, which are available at retail stores and online throughout New York and the United States.

21. Defendants manufacture, market, advertise, and distribute the Products throughout the United States. Defendants created and/or authorized the false, misleading, and deceptive

4

advertisements, packaging, and labeling for the Products.

## JURISDICTION & VENUE

22.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d), in that: (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of New York and Defendants The Hershey Company and Lily's are citizens of Pennsylvania; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

23.     This Court has personal jurisdiction over Defendants because Defendants conduct and transact business in the state of New York, contract to supply goods within the State of New York, and supply goods within the State of New York.

24.     Venue is proper because Plaintiff and many Class Members reside in the Southern District of New York, and throughout the State of New York. A substantial part of the events or omissions giving rise to the Class Members' claims occurred in this judicial district.

## COMMON FACTUAL ALLEGATIONS

25.     Consumers have become increasingly concerned about the effects of unhealthy chemicals in food products that they and their family members consume. Companies, such as Defendants, have capitalized on consumers' desire for safe products, and indeed consumers are willing to pay, and have paid, a premium for such food products.

26.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains lead or other unsafe and unhealthy substances, especially at the point of purchase.

27.     Therefore, consumers must and do rely on Defendants to truthfully and honestly report what their Products contain on their packaging or labels. Indeed, testing for these chemicals

5

requires expensive and destructive scientific methods. Given the relatively low price of the Products, no reasonable consumer would engage in such testing before purchasing the Products.

28. However, public reports and articles recently revealed that Defendants' Products contain unsafe levels of lead. Indeed, these levels of lead exceed the MADLs for this chemical by 44 percent, posing serious health risks. Despite these risks, Defendants failed to include any disclosures regarding lead levels on their Products.

29. Defendants knew and could not have been unaware of the lead in the Products.

30. By law, Defendants have a responsibility to implement controls to significantly minimize or prevent exposure to chemical hazards in the Products. Defendants manufacture and source the ingredients contained within the Products.

31. Defendants test the Products for quality control purposes, including the levels of toxic chemicals such as lead contained therein.

32. Additionally, Defendants receive Certificates of Analysis and other certifications from the suppliers of the ingredients used to create the Products. These documents will also disclose the levels of chemicals, such as lead, contained in each constituent ingredient.

33. Upon information and belief, these documents and their own testing alerted Defendants to the presence of harmful chemicals, a such as lead, in the Products.

34. Accordingly, Defendants had exclusive knowledge of the lead levels in the Products, and Plaintiff and the Class Members could not have known about this risk.

35. Consumers reasonably rely on the marketing and information on Defendants' labels in making purchasing decisions. By marketing the Products as containing only dark chocolate ingredients, and not disclosing the presence of lead, Defendants mislead reasonable consumers.

36. Despite Defendants' knowledge of lead in the Products, Defendants failed to

provide any warning on the place that every consumer looks when purchasing a product—the packaging or labels—that the Products contain lead.

37. Defendants' concealment was material because people are understandably concerned with what is in the food that they are putting into their bodies, as well as parents and caregivers being concerned with what they are feeding to the children in their care.

38. Consumers such as Plaintiff and the Class Members are influenced by the ingredients listed, as well as any warnings (or lack thereof) on the food packaging they buy.

39. Defendants know that if they had not omitted that the Products contained lead and that the Products were not safe or healthy for consumption then Plaintiff and the Class would not have paid a premium for the Products (or purchased them at all).

40. Plaintiff and the Class Members reasonably relied to their detriment on Defendants' misleading representations and omissions.

41. Defendants' false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

42. In making the false, misleading, and deceptive representations and omissions described herein, Defendants knew and intended that consumers would pay a premium for the Products. Had Defendants not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased and/or Plaintiff and the Class Members would not have been willing to purchase the Products at all.

43. Plaintiff and the Class Members each paid money for the Products; however, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to

7

Defendants' misrepresentations and omissions. Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendants' wrongful conduct.

## TOLLING

44. Any applicable statute of limitations has been tolled by the "delayed discovery" rule. Plaintiff did not know (and had no way of knowing) that the Products contained lead and cadmium because Defendants kept this information secret.

## CLASS ACTION ALLEGATIONS

45. Plaintiff brings her claims for relief pursuant to the Federal Rules of Civil Procedure 23(a), 23(b)(2), or 23(b)(3) on behalf of the following Class (collectively "the Class"):

> All consumers who purchased the Products anywhere in the United States during the relevant statute of limitations.

46. Additionally, or in the alternative, pursuant to Rules 23(a), 23(b)(2), or 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this class action on behalf of herself and all members of the "New York Subclass," which shall initially be defined as:

> All consumers who purchased the Products in the State of New York at any time during the relevant statute of limitations.

Excluded from the Class are governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, as well as any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

47. The Class and New York Subclass are properly brought and should be maintained

as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

48. <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers in the Class and the New York Subclass who are Class Members as described above who have been damaged by Defendants' deceptive and misleading practices.

49. <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

   a. Whether Defendants are responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased their Products;

   b. Whether the Products contain lead;

   c. Whether Defendants breached the implied warranty of merchantability relating to the Products;

   d. Whether Defendants' misconduct set forth in this Complaint demonstrates that Defendants had engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of their Products;

   e. Whether Defendants' false and misleading statements concerning their Products were likely to deceive the public and

   f. Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

50. <u>Typicality</u>: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class and New York Subclass was susceptible to the same deceptive, misleading conduct and purchased Defendants' Products and suffered the same injury. Plaintiff is entitled to relief under the same causes of action as the other

Class Members.

51. <u>Adequacy</u>: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent, she has a strong interest in vindicating her rights and the rights of the Class and New York Subclass, she has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

52. <u>Predominance</u>: Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class and New York Subclass. The Class and New York Subclass issues fully predominate over any individual issue because no inquiry into individual consumer conduct is necessary; all that is required is a narrow focus on Defendants' deceptive and misleading marketing and labeling practices.

53. <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

    a. The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

    b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

    c. When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

    d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

 e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

 f. This class action will assure uniformity of decisions among Class Members;

 g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

 h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

 i. It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendants' uniform false advertising to purchase their Products because they contain dark chocolate ingredients and not lead.

54. Accordingly, this Class and New York Subclass are properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.[5]

## CLAIMS

### COUNT I

**BREACH OF IMPLIED WARRANTY**
**(On Behalf of Plaintiff and All Class Members)**

55. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56. Defendants are merchants and were at all relevant times involved in the

---

[5] Plaintiff reserves the right to amend or modify the Class definition as this case progresses.

11

manufacturing, distributing, and/or selling of the Products.

57. The Products are considered a "good" under the relevant laws.

58. UCC section 2-314 provides that for goods to be merchantable they must (a) pass without objection in the trade under the contract description; (b) in the case of fungible goods, are of fair or average quality within the description; (c) are fit for the ordinary purposes for which such goods are used; and (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved.

59. Defendants breached the implied warranty of merchantability because the Products contained lead. Food products are not expected to contain lead.

60. Defendants have been provided sufficient notice of their breaches of implied warranties associated with the Product. Defendants were put on notice via correspondence sent by Plaintiff's counsel. Defendants were put on constructive notice of their breaches through media reports, as alleged herein, and upon information and belief, through their own product testing and records.

61. Plaintiff and each of the members of the Class were injured because the Products contained lead. Defendants thereby breached the following state warranty laws:

   a. Code of Ala. § 7-2-314;

   b. Alaska Stat. § 45.02.314;

   c. A.R.S. § 47-2314;

   d. A.C.A. § 4-2-314;

   e. Cal. Comm. Code § 2314;

   f. Colo. Rev. Stat. § 4-2-314;

   g. Conn. Gen. Stat. § 42a-2-314;

h. 6 Del. C. § 2-314;

i. D.C. Code § 28:2-314;

j. Fla. Stat. § 672.314;

k. O.C.G.A. § 11-2-314;

l. H.R.S. § 490:2-314;

m. Idaho Code § 28-2-314;

n. 810 I.L.C.S. 5/2-314;

o. Ind. Code § 26-1-2-314;

p. Iowa Code § 554.2314;

q. K.S.A. § 84-2-314;

r. K.R.S. § 355.2-313;

s. 11 M.R.S. § 2-314;

t. Md. Commercial Law Code Ann. § 2-314;

u. 106 Mass. Gen. Laws Ann. § 2-314;

v. M.C.L.S. § 440.2314;

w. Minn. Stat. § 336.2-314;

x. Miss. Code Ann. § 75-2-314;

y. R.S. Mo. § 400.2-314;

z. Mont. Code Anno. § 30-2-314;

aa. Neb. Rev. Stat. § 2-314;

bb. Nev. Rev. Stat. Ann. § 104.2314;

cc. R.S.A. 382-A:2-314;

dd. N.J. Stat. Ann. § 12A:2-314;

ee. N.M. Stat. Ann. § 55-2-314;

ff. N.Y. U.C.C. Law § 2-314;

gg. N.C. Gen. Stat. § 25-2-314;

hh. N.D. Cent. Code § 41-02-31;

ii. II. O.R.C. Ann. § 1302.27;

jj. 12A Okl. St. § 2-314;

kk. Or. Rev. Stat. § 72-3140;

ll. 13 Pa. Rev. Stat. § 72-3140;

mm. R.I. Gen. Laws § 6A-2-314;

nn. S.C. Code Ann. § 36-2-314;

oo. S.D. Codified Laws, § 57A-2-314;

pp. Tenn. Code Ann. § 47-2-314;

qq. Tex. Bus. & Com. Code § 2.314;

rr. Utah Code Ann. § 70A-2-314;

ss. 9A V.S.A. § 2-314; tt. Va. Code Ann. § 8.2-314;

uu. Wash. Rev. Code Ann. § 6A.2-314;

vv. W. Va. Code § 46-2-314;

ww. Wis. Stat. § 402.314; and

xx. Wyo. Stat. § 34.1-2-314.

62. As a direct and proximate result of Defendants' breach of the express warranty, Plaintiff and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

## COUNT II

### VIOLATION OF NEW YORK GBL § 349
### (On Behalf of Plaintiff and New York Subclass Members)

63. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

64. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

65. The conduct of Defendants alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages against Defendants, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products and from the charging consumers monies in the future.

66. Defendants misleadingly, inaccurately, and deceptively advertise and market the Products to consumers. By misrepresenting the true contents of the Products, Defendants' marketing and labeling misleads a reasonable consumer.

67. Defendants had exclusive knowledge of the lead levels in the Products.

68. Defendants' misrepresentations and omissions were material because consumers are concerned with the safety of food that they purchase, and the ingredients therein.

69. Defendants' improper consumer-oriented conduct—including Defendants' misrepresentation and omissions regarding the lead levels in the Products—is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendants' Products when they otherwise would not have.

15

Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

70. Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for Products that—contrary to Defendants' misrepresentations and omissions—contain lead. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

71. Defendants' deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law § 349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

72. As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary damages, statutory damages of $50 per unit sold, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, as well as interest, and attorneys' fees and costs.

## COUNT III

### VIOLATION OF NEW YORK GBL § 350
### (On Behalf of Plaintiff and the New York Subclass Members)

73. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

74. N.Y. Gen. Bus. Law § 350 provides, in part, as follows: False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

75. N.Y. Gen. Bus. Law § 350-A(1) provides, in part, as follows: "The term 'false

16

advertising,' means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual."

76. Defendants' labeling and advertisements contain untrue and materially misleading statements concerning Defendants' Products inasmuch as they misrepresent the existence of lead in the Products. By misrepresenting the true contents of the Products, Defendants' marketing and labeling misleads a reasonable consumer.

77. Defendants had exclusive knowledge of the lead levels in the Products.

78. Defendants' misrepresentations and omissions were material because consumers are concerned with the safety of food that they purchase, and the ingredients therein.

79. Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and paid a premium for the Products which—contrary to Defendants' representation—do not disclose the existence of lead in the Products. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

80. Defendants' advertising and products' labeling induced Plaintiff and the New York Subclass Members to buy Defendants' Products.

81. Defendants made their untrue and/or misleading statements and representations

willfully, wantonly, and with reckless disregard for the truth.

82. Defendants' material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendants' material misrepresentations.

83. As a result of Defendants' recurring, unlawful deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary damages, statutory damages of $500 per unit sold, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, as well as interest, and attorneys' fees and costs.

## COUNT IV

### UNJUST ENRICHMENT
### (On behalf of Plaintiff & All Class Members in the Alternative)

84. Plaintiff repeats and re-alleges each and every allegation contained in the Complaint as if fully set forth herein.

85. Plaintiff, on behalf of herself and consumers nationwide, brings a claim for unjust enrichment.

86. Defendants' conduct violated, inter alia, state and federal law by manufacturing, advertising, marketing, and selling its Products while misrepresenting and omitting material facts.

87. Defendants' unlawful conduct as described in this Complaint allowed Defendants to knowingly realize substantial revenues from selling their Products at the expense of, and to the detriment or impoverishment of, Plaintiff and Class Members, and to Defendants' benefit and enrichment. Defendants have thereby violated fundamental principles of justice, equity, and good conscience.

88. Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Defendants for the Products, which were not as Defendants represented them to be.

89. It is inequitable for Defendants to retain the benefits conferred by Plaintiff and Class Members' overpayments.

90. Plaintiff and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Annalisa Kell respectfully prays for judgment as follows:

(a) For an order certifying the proposed Classes as defined herein pursuant to Rule 23 of the Federal Rules of Civil Procedure and (appointing Plaintiff to serve as representative for the Class and Plaintiff's counsel to serve as Class Counsel;

(b) Awarding monetary damages and treble damages;

(c) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(d) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(e) Awarding punitive damages;

(f) Awarding Plaintiff and Class Members its costs and expenses

incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(g) Granting such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Annalisa Kell hereby demands that this matter be tried before a jury.

Date: January 6, 2023

Respectfully submitted,

**WEITZ & LUXENBERG, PC**

/s/ James J. Bilsborrow

James J Bilsborrow (JB8204)
700 Broadway
New York, NY 10003
(212) 558-5500
jbilsborrow@weitzlux.com

*Counsel for Plaintiff and the Nationwide Class*