```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANNALISA KELL,

                    Plaintiff,

        - against -

LILY'S SWEETS, LLC and THE HERSHEY
COMPANY,

                    Defendants.
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/13/24

23 Civ. 0147 (VM)

DECISION AND ORDER

**VICTOR MARRERO, United States District Judge.**

Defendants Lily's Sweets, LLC ("Lily's Sweets") and The Hershey Company ("Hershey," and together with Lily's Sweets, "Defendants") move pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the Complaint brought by Plaintiff Annalisa Kell ("Kell" or "Plaintiff"). For the reasons stated below, the Court holds that Plaintiff does not have standing to bring this action, and Defendants' 12(b)(1) motion is accordingly **GRANTED**.

## I. BACKGROUND[1]

Defendants manufacture, market, advertise, and distribute chocolate throughout the United States. (See Complaint ("Compl."), Dkt. No. 1, ¶ 20.) Plaintiff is an

---

[1] Except as otherwise noted, the following background derives from the Complaint. The Court takes all facts alleged therein as true and construes all justifiable inferences arising therefrom in the light most favorable to the plaintiff, as required under the standard set forth in Section II below.

individual consumer living in New York who, at times, purchased Lily's Extra Dark Chocolate 70% Cocoa chocolate bars (the "Products"), one of the many chocolate products made by the Defendants. (See Compl. ¶¶ 1, 14, 15.)

An article first published in December 2022 by *Consumer Reports* magazine reported the presence of lead and cadmium in certain dark chocolate bars. (See Compl. ¶ 4; see also Kevin Loria, Lead and Cadmium Could Be in Your Dark Chocolate, Consumer Reports (published Dec. 15, 2022) (updated Oct. 25, 2023), https://www.consumerreports.org/health/food-safety/lead-and-cadmium-in-dark-chocolate-a8480295550 [perma.cc/WJ2Y-WVFJ] [hereinafter the "*Consumer Reports* Article" or the "Article"].) As described in a separate document setting forth the scientific basis for the Article's conclusions, *Consumer Reports* examined two or three samples of twenty-eight well-known varieties of chocolate bars, sourced from twenty-one different brands. (See Consumer Reports Test Methodology: Heavy Metals in Chocolate Bars, Consumer Reports, (published January 2023), https://article.images.consumerreports.org/image/upload/v1672933163/prod/content/dam/CRO-Images-2022/Special%20Projects/Consumer_Reports_Test_Methodology_for_Heavy_Metals_in_Chocolate_Bars_-_January_2023.pdf [perma.cc/AC2V-3CFC] [hereinafter the "*Consumer Reports* Article Methodology" or

2

the "Article Methodology"].)[2] The "majority" of the samples tested by *Consumer Reports* were purchased "between April and May 2022 from online and stores in the New York area." (Id.) Among other findings, the Article notes that Lily's Extra Dark Chocolate 70% Cocoa contained "high" levels of lead relative to California regulatory thresholds: more specifically, 144% of the Maximum Allowable Dose Level ("MADL") for lead as set by California Health & Safety Code § 25249.5. (See Article.)

Shortly after *Consumer Reports* published the Article, Plaintiff brought this suit on behalf of herself and similarly situated individuals, alleging breach of implied warranty, violations of New York General Business Law § 349, violations of New York General Business Law § 350, and unjust enrichment in connection with her purchase of Defendants' Products. (See Compl. ¶¶ 55-90.) Plaintiff does not allege that she suffered a personal injury because of the lead she alleges the Products contained. Rather, Plaintiff alleges that Defendants' failure to disclose the possibility of lead contamination in the Products was a deceptive marketing practice. (See id. ¶ 15.) Plaintiff claims that, had she known the Products were lead-

---

[2] The Court considers the contents of the *Consumer Reports* Article and the Article Methodology on this motion to dismiss because, together, those documents form the basis of Kell's action and are therefore integral to the Complaint. See Revitalizing Auto Communities Envtl. Response Tr., 92 F.4th 415, 436 (2d Cir. 2024).

3

contaminated, she would have paid less for them, or she would not have bought them at all. (See id. ¶¶ 17, 35-43.) Plaintiff thus contends that she suffered a financial injury equal to the difference between the price she paid and the price she would have paid had the Products disclosed the possibility of lead contamination.

Following an exchange of pre-motion letters pursuant to this Court's Individual Practices (See Dkt. Nos. 18, 18-1, 18-2), Defendants filed the instant motion to dismiss and a corresponding memorandum of law in support (see Dkt. No. 27; see also Dkt. No. 28 [hereinafter the "Motion" or "Mot."]). Thereafter, Plaintiff filed her memorandum of law in opposition to the motion (see Dkt. No. 31 [hereinafter the "Opposition" or "Opp."]), and Defendants filed their reply memorandum of law in further support of the motion (see Dkt. No. 32 [hereinafter the "Reply"]).

After the Motion had been fully submitted, Defendants also filed two notices of supplemental authority. Defendants first alerted the Court (see Dkt. No. 34) to a decision in Paradowski v. Champion Petfoods USA, Inc., No. 22-292-CV, 2023 WL 3829559 (2d Cir. June 6, 2023), to which Plaintiff responded (see Dkt. No. 36). Defendants also alerted the Court (see Dkt. No. 37) to a decision in Grausz v. Hershey Co., No. 23 Civ. 00028, --- F. Supp. 3d ----, 2023 WL 6206449 (S.D.

Cal. Sept. 11, 2023), to which Plaintiff also responded (see Dkt. No. 38).

## II. LEGAL STANDARD

Defendants moved to dismiss the Complaint under Rule 12(b)(1).[3] (See Dkt. No. 27.) "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Nike, Inc. v. Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011) (cleaned up) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000), aff'd, 568 U.S. 85 (2013)). "Determining the existence of subject matter jurisdiction is a threshold inquiry." Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted). While the Court must take all facts alleged in the Complaint as true, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Id. (citation omitted). In ruling on a motion to dismiss under Rule 12(b)(1), the Court is also "permitted to rely on non-conclusory, non-hearsay statements outside the pleadings." M.E.S., Inc. v. Snell, 712 F.3d 666, 671 (2d Cir. 2013).

---

[3] The Court decides only the motion Defendants brought pursuant to Rule 12(b)(1). Because it concludes that it lacks subject-matter jurisdiction to hear this dispute, the Court does not consider or rule on Defendants' 12(b)(6) motion.

## III. DISCUSSION

Defendants contend that Kell has not suffered an injury-in-fact sufficient to confer standing under Article III of the Constitution. (See Mot. at 10-12.) The Court agrees and holds that Kell has not plausibly alleged that she purchased any Products contaminated with lead, and therefore she has not pleaded the existence of an injury-in-fact. Accordingly, the Court finds that it does not have jurisdiction over this dispute and dismisses the Complaint in its entirety without prejudice.

The federal judicial power extends only to "Cases" and "Controversies." U.S. Const. art. III § 2; see United States v. Texas, 599 U.S. 670, 675 (2023); Nat'l Coalition on Black Civic Participation v. Wohl, 661 F. Supp. 3d 78, 108 (S.D.N.Y. 2023). "[A] case or controversy can exist only if a plaintiff has standing to sue." Texas, 599 U.S. at 675; see Spokeo, Inc. v. Robins, 578 U.S. 330, 333 (2016); Wohl, 661 F. Supp. 3d at 108.

Standing requires a plaintiff to show that she has "suffered an 'injury in fact' that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," among other requirements not relevant here. Wohl, 661 F. Supp. 3d at 108 (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-

81 (2000)); see also Spokeo, 578 U.S. at 339. To comprise a concrete injury, the injury "must actually exist." Spokeo, 578 U.S. at 340; see also Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 146 (2d Cir. 2011). That is, it must be "real and not abstract." Spokeo, 578 U.S. at 340 (quotation marks omitted); see also Amidax, 671 F.3d at 146.

In the context of an alleged class action like the case at hand, a plaintiff must show "that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." Lewis v. Casey, 518 U.S. 343, 357 (1996) (citations and quotation marks omitted); see Mahon v. Ticor Tit. Ins. Co., 683 F.3d 59, 62, 64 (2d Cir. 2012). It therefore "adds nothing to the question of standing" that Kell purports to represent a large class of similarly situated individuals. Lewis, 518 U.S. at 357; see Mahon, 683 F.3d at 64.

Kell must therefore plausibly allege that she herself purchased chocolate that contained lead. Her theory of standing is that lead-contaminated chocolate is worth less than chocolate free from any amount of lead; unless she has a basis to allege that her chocolate contained lead, she has no basis to allege that she overpaid for her chocolate. (See Compl. ¶¶ 8, 12; Opp. at 8-9.) However, because Kell has

7

suffered no physical injury or illness from which the Court might infer lead exposure, she asks the Court to infer that lead was present in all Lily's Extra Dark Chocolate 70% Cocoa chocolate bars sold to consumers, based solely on the findings of the *Consumer Reports* Article. (See Opp. at 8-9.) The Court declines to do so.

The Second Circuit's holding in Amidax makes clear why Kell has not adequately alleged an injury-in-fact in her Complaint. See 671 F.3d 140. In Amidax, the plaintiff sued S.W.I.F.T. — a network that facilitates electronic transactions between banks — for releasing the plaintiff's data to the federal government without permission. See id. at 143. The factual bases for that claim were third-party reports that S.W.I.F.T. had turned over some of its data to the government; the plaintiff further alleged that it had conducted business over the S.W.I.F.T. network in the past and therefore its data had likely been shared with the government. See id. at 143, 146. Without pleading other specific facts upon which a court could conclude that the plaintiff's data was included in the set of data that S.W.I.F.T. had released, it was "merely hypothetical and conjectural" that the data shared with the government included plaintiff's data. Id. at 148-49. In other words, without some factual support that the plaintiff's data had

8

been included in the data S.W.I.F.T. shared with the government, the plaintiff's injury-in-fact was conceivable but not plausible. Id. at 146 (citing Iqbal, 556 U.S. at 678).

Kell's circumstances here are quite similar, requiring a similar result. The *Consumer Reports* Article does not supply a factual basis upon which Kell can plausibly allege that she purchased chocolate bars contaminated with lead. *Consumer Reports* examined just two or three samples of Lily's Extra Dark Chocolate 70% Cocoa. (See Article Methodology.) It would be impermissible conjecture to extrapolate those findings to every Lily's Extra Dark Chocolate 70% Cocoa chocolate bar ever sold, or to the specific Products purchased by Kell, without some specific factual basis to do so. See Amidax, 671 F.3d at 146, 148-149.

In a similar vein, Kell does not plead that she regularly obtained her chocolate from the same source as *Consumer Reports*. Nor could she, given that *Consumer Reports* did not specify where it got its sample chocolate, other than noting that the "majority" of the samples came from "online and stores in the New York area." (Article Methodology.) This omission underscores why Kell has not alleged a sufficient factual basis to support a conclusion that her Products exhibited the same defects as the two or three chocolate bars tested by *Consumer Reports*: she has generally alleged

9

wrongdoing by the Defendants, but not wrongdoing that affects Kell in particular. See Amidax, 671 F.3d at 148-149. Therefore, Kell has not sufficiently pleaded that she suffered injury-in-fact caused by Defendants' chocolates.

Kell's reliance (Opp. at 9-10) on John v. Whole Foods Mkt. Grp., Inc. to counter this conclusion is unavailing. 858 F.3d 732, 736 (2d Cir. 2017). In that case, the plaintiff had standing to sue a chain of grocery stores when the New York City Department of Consumer Affairs published investigative findings that the chain had "systematically and routinely mislabeled and overpriced" pre-packaged foods. Id. at 737. The investigative findings in John are different from the *Consumer Reports* findings here. John involved a comprehensive test of eighty types of pre-packaged foods in specific grocery store locations in New York City, which found that all were mislabeled to some degree and that 89% were mislabeled so severely that they violated federal food labeling standards. Id. at 734. Moreover, the plaintiff in John pleaded that he had "regularly" purchased the same products, from the same store locations, and during the same time period covered by the regulator's investigation. Id. at 737. Together, these facts were enough to enable the court to conclude that the plaintiff had plausibly "overpaid for at least one product" at the defendant's stores. Id. at 737. By comparison, the

*Consumer Reports* findings in this case are based on just two or three samples,[4] and the Complaint lacks any factual allegations about whether Kell's Products and the samples tested by *Consumer Reports* were purchased in similar circumstances (for instance, whether she purchased them at a similar time and place).

Kell has thus overstated the Second Circuit's holding in John. At the pleading stage, John permits a court to infer that the plaintiff purchased a specific product with a defect that had been plausibly reported by third-party tests to be widespread, systematic, routine, or uniform. See id. at 736, 737, 738; see also Clinger v. Edgewell Personal Care, LLC, No. 21 Civ. 1040, 2023 WL 2477499, at *6 (D. Conn. Mar. 13, 2023) (citing John) ("Nor is this a case where the outside study relied on by plaintiffs is not comprehensive in scope and amounts to little more than speculative anecdotal evidence that a product purchased by plaintiff may be defective."); accord Kimca v. Sprout Foods, Inc., No. 21 Civ.

---

[4] Kell's contention (Opp. at 8) that "testing was consistent across nearly 30 tested samples and therefore reveals a systematic defect" is not accurate. Plaintiff alleges that she purchased just one of the twenty-eight varieties of chocolate tested by *Consumer Reports*. The findings with respect to the other twenty-seven varieties of chocolate are irrelevant to whether the specific variety Kell purchased contained lead. (See Article.) Moreover, with respect to the consistency of the test results, *Consumer Reports* indicated that "heavy metal levels can vary," and indeed many of the chocolate varieties tested were compliant with the stringent California MADL regulations for lead, cadmium, or both. (Id.)

11

12977, 2022 WL 1213488, at *5 (D.N.J. Apr. 25, 2022) (citing John) ("[P]laintiffs can establish standing using representative testing where they allege that all of the products sold by the defendant contain the alleged defect.").

However, John does not relax the foundational requirement that all reasonable inferences drawn from pleaded facts must be plausible. See 858 F.3d at 738. Accordingly, district courts following John have still held plaintiffs to the burden of explaining why a third party's analysis can be reasonably extrapolated to the plaintiff's individual purchase. See Onaka v. Shiseido Ams. Corp., No. 21 Civ. 10665, 2023 WL 2663877, at *5 (S.D.N.Y. Mar. 28, 2023) ("Nor have Plaintiffs plausibly alleged that the presence of [the contaminant] in the Products is so widespread as to render it plausible that any Plaintiff purchased a mislabeled Product at least once."); Wilson v. Mastercard, Inc., No. 21 Civ. 5930, 2022 WL 3159305, at *4 (S.D.N.Y. Aug. 8, 2022) ("[M]erely alleging 'numerous' transactions in an environment of systematic fraud, as Plaintiff does here, is insufficient to allege a non-speculative Article III injury-in-fact."); Gaminde v. Lang Pharma Nutrition, Inc., No. 18 Civ. 300, 2019 WL 1338724, at *2 (N.D.N.Y. Mar. 25, 2019) ("[I]t is speculation to allege that because two CVS Krill Oil bottles

in a USDA study were found to [be defective], the bottle that [plaintiff] purchased must as well.").[5]

As a final matter, the Court notes that the United States District Court for the Southern District of California reached a different conclusion on the standing of a plaintiff in near-identical circumstances. See Grausz v. The Hershey Co., 23 Civ. 00028, --- F. Supp. 3d ----, 2023 WL 6206449 (S.D. Cal. Sept. 11, 2023). The court in Grausz found the plaintiff's allegations of injury-in-fact based on the *Consumer Reports* Article to be legally sufficient, noting the absence of applicable Ninth Circuit authority requiring that the "specific unit of Product she purchased contains heavy

---

[5] Accord Wallace v. ConAgra Foods, Inc., 747 F.3d 1025, 1030 (8th Cir. 2014) ("Without any particularized reason to think the consumers' own packages of Hebrew National beef actually exhibited the alleged non-kosher defect, the consumers lack Article III standing to sue ConAgra."); Bowen v. Energizer Holdings, No. 21 Civ. 4356, 2023 WL 1786731, at *4 (C.D. Cal. Jan. 5, 2023) ("Plaintiff does not allege that [the independent laboratory's] discovery can be extrapolated across all of Defendants' products or to a specific batch which could have ended up in her purchased sunscreen."); Bowen v. Energizer Holdings, 21 Civ. 4356, 2022 WL 18142508, at *4 (C.D. Cal. Aug. 29, 2022) ("Plaintiff also does not allege that she had her sunscreen specifically tested and found that it contained benzene. Plaintiff's claim is based on the *hypothetical* possibility that the products she purchased *may* have contained benzene — not that she purchased a product that demonstrably did contain benzene, such as from a batch identified by [the independent laboratory]." (emphases in original)); Russo v. Microsoft Corp., No. 20 Civ. 04818, 2021 WL 2688850, at *3 (N.D. Cal. June 30, 2021) (granting motion to dismiss on standing grounds where plaintiffs did not claim to have used the Microsoft products reported by a third party to have defective data privacy practices); Pels v. Keurig Dr. Pepper Inc., No. 19 Civ. 3052, 2019 WL 5813422, at *5 (N.D. Cal. Nov. 7, 2019) ("[P]laintiff has failed to plead a particularized injury by failing to plead the water *he* purchased contained violative arsenic levels." (emphasis in original)); Doss v. Gen. Mills, Inc., No. 18 Civ. 61924, 2019 WL 7946028, at *2 (S.D. Fla. June 14, 2019) ("Doss does not, however, even allege that the Cheerios she herself bought actually contain any [contaminant] — just that some Cheerios that have been tested do.").

metals." 2023 WL 6206449, at *4 (brackets omitted). The court ultimately dismissed many of the plaintiff's claims on other grounds. See id. at *11. However, this Court is bound to reach a different conclusion given the Second Circuit's holding in Amidax, which clarifies how a plaintiff may make a particularized, non-conjectural showing of injury-in-fact to support Article III standing. See 671 F.3d at 146.

In sum, Kell has not adequately pleaded the existence of an injury-in-fact because the allegation that she purchased chocolate contaminated with lead is supported only by the anecdotal findings of *Consumer Reports* based on a limited sample of allegedly contaminated products. Accordingly, Kell lacks standing, and her Complaint must be dismissed in its entirety. Because the Court dismisses the Complaint for failure to plead injury-in-fact, the Court need not address the parties' additional arguments.

## IV.  ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion (Dkt. No. 27) filed by defendants Lily's Sweets, LLC and The Hershey Company to dismiss the Complaint (Dkt. No. 1), pursuant to Federal Rule of Civil Procedure Rule 12(b)(1) is **GRANTED.**

The Clerk of Court is respectfully directed to dismiss the Complaint without prejudice and to close this case.

**SO ORDERED.**

Dated:   New York, New York
         13 March 2024

                                          _____
                                              Victor Marrero
                                                U.S.D.J.